UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 14-CR-40028-TSH |
| | ) | |
| JAMES MERRILL, | ) | Motion to Leave to File Excess Pages |
| Defendant | ) | Granted on May 25, 2016, Doc. 243. |

## **Defendant James Merrill's Motion to Suppress Evidence and Incorporated Memorandum of Law**

Now comes the Defendant, James Merrill, by and through undersigned counsel, pursuant

to the Fourth Amendment of the United States Constitution and Rule 12 of the Federal Rules of

Criminal Procedure, and respectfully moves the Court for an order suppressing all evidence

seized pursuant to the execution of a search warrant for 225 Cedar Hill Street, Suite 118,

Marlborough, Massachusetts, as the search warrant was unconstitutionally overbroad and

unparticularized.  As detailed herein, the search warrant at issue permitted agents to seize "all"

records "that constitute evidence, fruits or instrumentalities of violations of 18 U.S.C. §§ 1343

and 1349, including, without limitation," a broad array of records, as well as "all" computer

hardware, software and storage media.  Because the warrant did not limit the seizures to

materials for which there existed probable cause, and also failed to adequately guide the agents

in determining which materials were properly subject to seizure, the warrant was

unconstitutionally overbroad and unparticularized.  In addition, because the warrant was so

obviously overbroad and lacking in particularity, it was invalid on its face and no reasonable law

enforcement officer could have relied on its validity, thus depriving the government of the "good

faith" safe harbor.  For these reasons, and others detailed *infra*, all evidence seized pursuant to

the search warrant must be suppressed.

As further grounds and reasons therefore, Mr. Merrill relies upon the memorandum of law set forth below.

**Memorandum of Law**

I. *Introduction.*

James Merrill, a loving, devoted and hard-working father of three and husband of 25 years, has never before been in trouble. Indeed, for his entire life, Jim has embodied the antithesis of a federally charged criminal defendant. As noted during the bail hearing in this case, a lifelong resident of the greater Worcester community, Jim operated a commercial cleaning business for approximately 25 years, while devoting a substantial amount of time to his family, community and church—all of which was documented in 31 letters submitted on Jim's behalf in support of pretrial release in this case, including letters from family, friends, members of his community, and the Reverend of Jim's church, St. Matthew Parish, in Southborough. *See* Dkt. Entry 33.

The son of a World War II veteran/career high school educator (father) and a ballet studio owner/operator (mother), Jim has lived a humble, disciplined and law-abiding life. Married in 1990, Jim and his wife Kristin bought their first home in Hopkinton, lived there for 7 years, and then moved to a new home, only 1.5 miles away, in Ashland. Their modest home, purchased in 1997 for approximately $280,000, is where they have raised their three children: (1) Curran, now age 22, (2) Caroline, age 19, a student at the University of New Hampshire, and (3) Jack, age 16, presently a 9th grader at Ashland High School. Jim continues to care for his mother, now 90 years old (his father passed in 2007 from Parkinson's Disease, after 57 years of marriage). Jim has four sisters and a brother (four of whom reside in New England), and a host of nieces, nephews and cousins—there is not a single sibling, niece or nephew with whom Jim does not

share a close relationship, and they have all rallied to support him in this critical moment in his life. Jim has trained for and run over 10 marathons, often doing so in support of various charities. His last marathon was several years ago when he ran for the Angel Fund in memory of a close childhood friend, Stephen McManus, who died of ALS. Kristin, who presently works as Director of Religious Education at the family's church, is herself a remarkable person who has developed incredibly strong ties to the local community. In short, the Merrills believed they were living an honorable, decent, law-abiding life—something reflected in the government's post-indictment interviews of potential witnesses, many of whom made statements exculpating Mr. Merrill in this case. *See* Government Discovery Letter, dated December 10, 2014, attached hereto as Exhibit 5.

On April 15, 2014, the Merrills' lives were turned upside down. Armed with a search warrant, a team of law enforcement officers entered the Marlborough-based offices of TelexFree, located at 225 Cedar Hill Street, Suite 188. The search warrant, dated April 15, 2014, was issued pursuant to an application and affidavit filed by John S. Soares, a Special Agent with the Department of Homeland Security ("Agent Soares" and/or "affiant," herein). *See* Search Warrant attached hereto as Exhibit 1; Application For A Search Warrant, attached hereto as Exhibit 2; Affidavit of John S. Soares in Support of Search Warrants ("Affidavit" or "Soares Affidavit," herein), attached hereto as Exhibit 3. Executing the warrant, law enforcement officers seized an unfathomable amount of materials, both hard copy and digital. Search Warrant Return attached hereto as Exhibit 4.

A.    *The Search Warrant*.

The face of the search warrant authorized law enforcement to seize the following materials:

> "Evidence and instrumentalities of violations of 18 U.S.C. §§1343 and 1349. The items to be seized are detailed in Attachment B."

Exhibit 1.  Attachment B, titled "Items To Be Seized," is broken into two main categories, sections "I"

and "II."  Section I begins as follows:

> I.      *All records*, *in whatever form*, *including but not limited* to electronic data,
> database entries, emails, hardcopy documents, and tangible objects, that constitute
> evidence, fruits, or instrumentalities of violations of 18 U.S.C. §§1343 and 1349,
> *including, without limitation . . . ."*

Exhibit 1 (emphasis added).  Subsection I proceeds to list 11 subcategories of records, delineated as

Sections A-K, many of which also contain subcategories of their own.  *See* Exhibit 1.  These subsections

are quoted, verbatim, below.  Section II of Attachment B reads as follows:

> II.     *All* computer hardware, computer software, computer-related documentation, and
> storage media ("computer equipment").  Off-site searching of the computer
> equipment shall be limited to searching for the items described in Section I above.

Exhibit 1 (emphasis added).  While Category II restricted the search of seized computers to the records

described in Category I, the seizure component of the search warrant did not contain any limitation as to

the computers, and it therefore authorized the seizure of every computer on the premises, whether or not

there existed a connection to the business of TelexFree and/or a subject of the government's

investigation.  That is precisely how the agents interpreted the search warrant, as noted in a report

detailing execution of the warrants, wherein the agent details the seizure of a laptop from a company

consultant despite being informed that the laptop personally belonged to the consultant.  *See* Soares

Report of Investigation, dated May 2, 2014, attached hereto as Exhibit 6.

As for the "items described in Section I"—*i.e.*, the items delineated in Section I (A) – (K), the

search warrant provides as follows:

> "A.     Records and tangible objects pertaining to the following people, entities and
> websites:
>
>   1.  Brazilian Help, Inc.
>   2.  Diskavontade
>   3.  Ympactus
>   4.  TelexFree LLC

5. TelexFree, Inc.
6. TelexFree Financial
7. www.telexfree.com
8. Carlos Wanzeler
9. James Merrill

B.     Records and tangible objects pertaining to the following topics:

    1. All VoIP customers and promoters including but not limited to:

        a.     All data concerning the names, addresses, email addresses, contact information and any other identifying information for all VoIP customers and promoters since January 1, 2012;

        b.     Records detailing the methods and amounts of all financial transactions involving all promoters and VoIP customers (both active and inactive) including bank, credit card, virtual credits, or any other type of payment credit or transfer, including transactions within the TelexFree back office;

        c.     Records detailing the amount of credit card chargebacks from VoIP customers and promoters;

C.     Records and tangible objects pertaining to the payment, receipt, transfer, or storage of money or other assets by Diskavontade, Brazilian Help, Inc., Ympactus, TelexFree LLC, TelexFree Inc., and TelexFree Financial or any one of the names listed I.A above, including, without limitation:

    1. Bank, credit union, investment, money transfer, and other financial accounts
    2. Credit and debit card accounts
    3. Tax statements and returns
    4. Business or personal expenses
    5. Income, whether from wages or investments
    6. Loans

D.     Records pertaining to the business practices of Diskavontade, Brazilian Help, Inc., Ympactus, TelexFree LLC, TelexFree Inc., and TelexFree Financial, including but not limited to any records relating to the compensation structure for promoters or other investors from the time of the respective companies' inception to present;

E.     Records pertaining to the total number of VoIP users for TelexFree's VoIP products, including but not limited to the number of unique VoIP users and the minutes used by each VoIP user;

F.        Reports, data, contracts, agreements, design plans, proposals, and other documentation evidencing affiliation or business relationships with telecommunications companies;

G.        Reports, data, contracts agreements, emails, statements to or from financial institutions or other documentation concerning financial dealings with financial institutions;

H.        Records, documents, written agreements, emails or notes concerning oral agreements and discussions, emails and letters from Diskavontade, Brazilian Help, Inc., Ympactus, TelexFree LLC, TelexFree Inc., and TelexFree Financial concerning or evidencing:

1. Ownership interests in and division of profits;
2. The sale and marketing of the VoIP product;
3. Promoter compensation;
4. The financial condition of the company;
5. The compensation plans for VoIP promoters;

I.        Records, documents, written agreements, emails, notes and letters, concerning or evidencing ownership interests in and division of profits from companies and stores described herein.

J.        For any computer hardware, computer software, computer-related documentation, or storage media called for by this warrant or that might contain things otherwise called for by this warrant ("the computer equipment"):

1. evidence of who used, owned, or controlled the computer equipment;
2. evidence of the attachment of other computer hardware or storage media;
3. evidence of counter-forensic programs and associated data that are designed to eliminate data;
4. evidence of the times the computer equipment was used;
5. passwords, encryption keys, and other access devices that may be necessary to access the computer equipment;
6. records and tangible objects pertaining to accounts held with companies providing internet access or remote storage of either data or storage media; and

K.        Records and tangible objects relating to the ownership, occupancy, or use of the premises to be searched (such as utility bills, phone bills, rent payments, mortgage payments, photographs, insurance documentation, receipts and check registers)."

*See* Exhibit 1, Attachment B.

B.     *The Soares Affidavit.*

In short, Agent Soares averred that TelexFree, defined by him as including TelexFree, Inc. and TelexFree LLC, *see* Soares Affidavit at ¶11, was "actually a pyramid scheme" and a "fundamentally fraudulent business." Soares Affidavit ¶¶11, 101.[1] According to the affiant, "a pyramid scheme involves a seemingly legitimate business that purports to sell a product but actually derives its revenue not from selling the product to third parties but from recruiting new participants to pay into the system." Soares Affidavit at ¶12. The affiant further asserted that organizers of a pyramid scheme collect money from new investors and use those funds to pay returns promised to earlier participants, and at some point the pyramid scheme becomes unsustainable because it runs out of new participants depositing sufficient funds to cover commitments to earlier participants. Soares Affidavit at ¶¶13-14. According to the affiant, the alleged pyramid scheme collapsed after TelexFree announced changes to its compensation system "that appear to have been prompted by an investigation by the Massachusetts Securities Division. Soares Affidavit at ¶17. The affiant asserts that soon after the changes were announced, TelexFree promoters began protesting outside TelexFree's offices, and on April 14, 2014, TelexFree filed for voluntary Chapter 11 bankruptcy protection. Soares Affidavit at ¶18.

As for the timing of the alleged criminal conduct, Agent Soares avers that "[i]n this case, between about January 2012 and March 2014, TelexFree purported to aggressively market its VOIP service by recruiting thousands of 'promoters' to post ads for the product on the internet." Soares Affidavit at ¶15. The balance of Agent Soares' affidavit appears limited by the 2012 time-stamp. *See, e.g.*, Soares Affidavit at ¶20 ("Wanzeler registered a company in Brazil named 'Ympactus,' which began doing business as TelexFree in 2012"); *id*. at ¶22 ("Records from the

---

[1] In a companion pleading, filed today, Mr. Merrill makes a *Franks* challenge to Agent Soares' description of TelexFree as an illegal pyramid scheme.

Brazilian Ministry of the Treasury showed that, since TelexFree began recruiting promoters in Brazil in 2012, . . . ."); *id.* at ¶23 ("As discussed further below, a review of filings by U.S. banks for TelexFree's banking activity in 2012-2013 showed a pattern similar to the activity uncovered in Brazil . . . ."); *id.* at ¶25 ("In February 2012, Common Cents Communications filed an article of amendment with the Massachusetts Secretary of State, changing the name of the corporation to 'TelexFree, Inc.'"); *id.* at ¶26 ("In July 2012, another entity named 'TelexFree' was registered as a limited liability company ('LLC') in the State of Nevada"); *id.* at ¶¶69-77 (documenting undercover agent's interaction with the company from October – December 2013). Likewise, the affiant's analysis of bank records and financial statements was limited to the time period 2012 through 2014. *Id.* at ¶¶78-91.

In terms of the <u>object</u> of Agent Soares' investigation, the overwhelming majority of Agent Soares' affidavit is directed towards TelexFree only. *See, e.g.*, Soares Affidavit at ¶¶11-19, 34-103. Agent Soares avers that "most or all of TelexFree's business records are evidence of an ongoing pyramid scheme, and so subject to seizure," "includ[ing], for example, all accounting and financial records; all promoter-related records; all web site-related records (*e.g.*, instructions to promoters, advertising, etc.); and all records related to VOIP design and implementation." Soares Affidavit at ¶103. The affiant dedicated paragraphs 34-100 of his affidavit to details of TelexFree's business operations. *See* Soares Affidavit at ¶¶34-100. In these paragraphs, the affiant detailed TelexFree's VOIP product, TelexFree's compensation structure, a description of the various plans under which a TelexFree promoter could earn money, alleged corroborating information from an undercover agent posing as a new TelexFree promoter, TelexFree's revenues for the period January 2012 through December 2013, an analysis of TelexFree bank

records dating to February 2012, and an analysis of credit processing records for TelexFree. Soares Affidavit at ¶¶34-100.

As for other businesses associated with TelexFree, Carlos Wanzeler or James Merrill, the affidavit briefly addresses several other companies allegedly bearing some relation to TelexFree and/or the defendants, James Merrill and/or Carlos Wanzeler.[2] In particular, in the context of discussing the "Brazilian" investigation of TelexFree (wherein Agent Soares offers several conclusions based on "[d]ocuments provided by Brazilian law enforcement authorities . . ." and notes that the Brazilian government sued (not criminally charged) TelexFree in June 2013, and received an injunction, *see* Soares Affidavit at ¶¶20-23), Agent Soares references a company named "Ympactus" in Brazil, registered by Wanzeler, which allegedly began doing business as TelexFree in 2012. Soares Affidavit at ¶20. Then, in paragraphs 24-33, Agent Soares outlines what he titles "TelexFree's Corporate Structure in the United States and Its Relationship with Other Entities," wherein he briefly addresses the following entities: (1) Common Cents Communications, (2) TelexFree LLC, a Nevada corporation, (3) TelexFree Financial (4) Diskavontade, (5) Brazilian Help, Inc., (6) and Ympactus. Soares Affidavit at ¶¶24-33. Agent Soares avers that it "appears" that TelexFree is "also intertwined" with these entities, and the government therefore "seeks authorization to review materials [that] pertain to these additional entities" because they "may" contain evidence related to the activities of TelexFree, Wanzeler, Merrill, and/or other co-conspirators. Soares Affidavit at ¶28.

---

[2] The affidavit wholly failed to identify any employees beyond Merrill, Wanzeler, and a third individual (Carlos Costa) as having any knowledge of the alleged pyramid scheme. *See, e.g.*, Soares Affidavit at ¶20 (referencing these three individuals). The affiant does aver that TelexFree has 15 employees at the Marlborough office, Soares Affidavit at ¶105, but the affiant did not identify the employees by name or allege they had knowledge of any alleged pyramid scheme.

Agent Soares does not, however, recount any factual information regarding the operations of these other businesses and/or how they independently engaged in any criminal conduct. Notably absent from the affidavit are any details of alleged criminal activity involving these other companies. Indeed, while attempting to intertwine the various businesses, Agent Soares never asserted that Brazilian Help or other businesses were fraudulent pyramid schemes.[3]

The affiant also described TelexFree's storage of electronic data, explaining that much of TelexFree's system of managing and compensating promoters was electronically based and that, according to James Merrill's testimony before the Massachusetts Securities Division, the promoter-related data was maintained on servers at two independent companies Xand Corp. and Exigo Office, Inc. Soares Affidavit at ¶106. The affiant did not, however, attempt to identify or explain the manner in which computers were used within the offices at TelexFree and which computers stored data relevant to the alleged pyramid scheme.

II.     *Argument*.

        A.      *Relevant Legal Principles.*

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment's particularity requirement requires "that a valid warrant: (1) must supply enough information to guide and control the executing agent's judgment in selecting where to search and what to seize, and (2) cannot be too broad in the sense that it includes items that should not be seized." *United States v. Kuc*, 737 F.3d 129, 133 (1st Cir. 2013). "[T]he requirement that the warrant itself particularly describe the material to be seized is not only to circumscribe the discretion of the executing officers but also to inform the person subject to the search

---

[3] In fact, the government eventually agreed to release funds seized from a Brazilian Help bank account.

and seizure what the officers are entitled to take." *In re Application of Lafayette Academy*, 610 F.2d 1, 5 (1st Cir. 1979), *citing United States v. Marti*, 421 F.2d 1263, 1268 (2nd Cir. 1970).

The primary purpose of the particularity requirement "is to prevent the use of general warrants authorizing wide-ranging rummaging searches in violation of the Constitution's proscription against unreasonable searches and seizures." *United States v. Logan*, 250 F.3d 350, 364-65 (6th Cir.), *cert. denied*, 534 U.S. 895, 997 (2001). In requiring a particularized description of articles to be seized, the Fourth Amendment "makes general searches impossible and prevents the seizure of one thing under a warrant describing another. *As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.*" *United States v. Fuccillo,* 808 F.2d 173, 175 (1st Cir.) (emphasis added), *cert. denied*, 482 U.S. 459 (1987), *quoting Marron v. United States,* 275 U.S. 192, 196 (1927). *See also United States v. SDI Future Health, Inc.*, 568 F.3d 684, 704-05 (9th Cir.2009) (invalidating categories of items listed in warrant for failure to cabin discretion of searching officers); *United States v. Leary*, 846 F.2d 592, 601 (10th Cir.1988) ("As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized").

In every case, the descriptions of the items to be seized "must be as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001). *See, e.g., Logan*, 250 F.3d at 365 (same). General descriptions will suffice only "[w]hen a more specific description of the items to be seized is unavailable." *United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir.), *cert. denied*, 502 U.S. 1035 (1991). Where, as here, however, information was available based upon which the list of items to be seized could have been further particularized, the warrant is invalid. *See, e.g., United States v. Bridges*, 344 F.3d 1010, 1019 (9th Cir. 2003); *United States v. Kow*, 58 F.3d 423, 427-

28 (9th Cir. 1995); *Leary*, 846 F.2d at 601 n.3, 604; *United States v. Abrams*, 615 F.2d 541, 545 (1st Cir. 1980); *Lafayette Academy*, 610 F.2d at 3. "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). While a magistrate's evaluation of an affidavit is accorded deference, *United States v. Jewell*, 60 F.3d 20, 22 (1st Cir. 1995), "[that] [d]eference . . . is not boundless." *United States v. Leon*, 468 U.S. 897, 914 (1984). Such deference does not, for example, extend to permit the upholding of a warrant that fails to describe with particularity the items subject seizure and which provides searching agents unfettered discretion in choosing what to seize. *See e.g., Fuccillo*, 808 F.2d at 176.

In addition, the scope of the search that may properly be authorized by the issuing judge may be no broader than the probable cause established by the affidavit. "An otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *Leary*, 846 F.2d at 605.[4] "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). A warrant that authorizes a search for items as to which the affidavit fails to establish probable cause is overbroad and violates the Fourth Amendment. *See Leary*, 846 F.2d at 605 ("When the probable cause covers fewer documents in a system of files, the warrant must . . . tell the officers how to

---

[4] *See also Kow*, 58 F.3d at 427; *United States v. Maxwell*, 920 F.2d 1028,1033 (D.C.Cir. 1990); *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 750 (9th Cir. 1989); *United States v. Roche*, 614 F.2d 6, 7 (1st Cir. 1980); *Lafayette Academy*, 610 F.2d at 3; *United States v. Patrick*, 916 F.Supp. 567, 574 (N.D.W.Va. 1996).

separate the documents to be seized from the others").[5]  All items seized pursuant to an overbroad category are subject to suppression.  *See United States v. Diaz*, 841 F.2d 1, 4 (1st Cir. 1988).

> B.    *Section I—authorizing the seizure of "all records," in "whatever form," "without limitation"—is overbroad and unparticularized.*

Here, the warrant could not have been any broader.  It authorized agents to seize "all records," in "whatever form," and "without [any] limitation . . . ."  *See* Exhibit 1, Attachment B, Section I.  By its very terms, the warrant was simply without limitation—whatsoever—as to the breadth of materials that could be seized, and it failed, in any serious respect, to provide any reasonable guidance to the law enforcement officers executing the warrant regarding what could, or could not, be seized pursuant to the warrant.  In so doing, it contravened the constitutional mandate that, "[a]*s to what is to be taken, nothing is left to the discretion of the officer executing the warrant.*" *Fuccillo,* 808 F.2d at 175 (emphasis added), *quoting Marron,* 275 U.S. at 196.  Mr. Merrill respectfully submits that the warrant cannot fairly be described as anything more than a "general warrant" authorizing the kind of "wide-ranging rummaging searches" that served as the catalyst for the Fourth Amendment.

---

[5] *See, e.g., Kow*, 58 F.3d  at 427 (affidavit did not establish the probable cause required to justify the widespread seizures authorized by the warrant);  *Maxwell*, 920 F.2d at 1033 (warrant overbroad where affidavit related only information implicating defendant in a specific scheme to defraud); *Center Art Galleries*, 875 F.2d at 750 (warrant overbroad where not limited to fraud in connection with the sale of Dali artwork, the only probable cause shown in the affidavit); *Roche*, 614 F.2d at 7 (failure to limit objects of search and seizure to documents  and records pertaining to automobile insurance "impermissibly broadened the scope of the search beyond the foundation of probable cause"); *Lafayette Academy*, 610 F.2d at 3 (warrant overbroad where not limited to documents evidencing fraud with respect to a particular loan program, which was all affidavit demonstrated probable cause to search for); *United States v. Joe*, 2007 WL 108465 at *7 (N.D.Cal. January 10, 2007)(failure to limit "documentary evidence" to be seized to that related to the cultivation and distribution of marijuana rendered description overbroad); *United States v. Slaey*, 433 F.Supp.2d 494, 500 (E.D.Pa.2006)(warrant overbroad where search of legitimate business not limited to contract under investigation); *Patrick*, 916 F.Supp. at 574 (warrant which exceeded the scope of probable cause shown in affidavit invalid).

The only conceivable limitations to the undeniably overbroad introductory language are (1) the warrant's reference to the statutory sections purportedly at issue (18 U.S.C. §§ 1343 and 1349), and (2) the subcategories that appear after the introductory language, namely Sections I (A)-(K). Neither of these two components of Attachment B, however, can save the instant warrant from constitutional challenge.

First, long ago, in *United States v. Roach*, 614 F.2d 6 (1st Cir.1980), the First Circuit held that an affiant's reference to a broad criminal statute "is no limitation at all." In *Roach*, wherein the First Circuit affirmed the district court's suppression order, the underlying warrants "each authorized the seizure of 'books, records, documents, consisting of but not limited to insurance applications, premium notices, claims requests for recovery, correspondence relating to applications and claims policies, ledger sheets, invoices, account journal, and office week ending progress reports *which are evidence, fruits and instrumentalities of the violation of Title 18, United States Code 1341*.'" (emphasis added). Because there existed probable cause as to motor vehicle insurance fraud only, and the warrant language did not limit the search to documents relating to motor vehicle insurance fraud, but instead "authorized the seizure of a far broader class of documents pertaining to all types of insurance," the court held the warrant was impermissibly overbroad, "beyond the foundation of probable cause." *Id.* at 7. Important for purposes of this case, the court rejected the government's argument that the language limiting the search to "evidence of violations of 18 U.S.C. §1341" rescued the warrant, holding that "section 1341 makes illegal all frauds that utilize the mails" and "limitation by so broad a statute is no limitation at all." *Id.* at 8.

The same reasoning applies with equal force here. 18 U.S.C. §§ 1343 and 1349—the two statutory sections cited within Section I of Attachment B—are no less broad than section 1341.

The "wire" analog to section 1341, they make illegal "all frauds" that utilize the wires, or conspiracies to commit fraud by wire. Like *Roach*, the citation to these statutory sections by the affiant imposes no limitations at all.

As such, to rescue the warrant challenged here, the government must instead rely upon the subcategories of information set forth in Section I (A) – (K). In *United States v. Kuc*, 737 F.3d 129, 131-32 (1ˢᵗ Cir.2013), the First Circuit did uphold the general, introductory language at issue here; in that case, the warrant authorized the seizure of "[a]ll records, in whatever form, and tangible objects that constitute evidence, fruits, and instrumentalities of violations of 18 U.S.C. §1343 (wire fraud), 2314 (interstate transportation of stolen property), 2315 (storage and sale of stolen property in interstate commerce), and 2 (aiding and abetting), including, without limitation: [list of twenty-three categories of items]." In *Kuc*, the court relied on the "detailed and particularized second clause" to hold the warrant constitutional—*i.e.*, the list of twenty-three categories of items. *Id.* at 132-33. Noting that the second clause tracked the allegations for which probable cause was established, the court ultimately held that the "'general' transitional phrase in this case should not be construed to defeat the particularity of the main body of the warrant." *Id.* at 133-34. While observing that the "phrase 'including, without limitation' is certainly not a model of precise drafting," the court held that, in that case, it did "not make the warrant constitutionally infirm because it is a transitional phrase linking to the second, very particular clause, and it must be read in that context, as in *Andresen* and *Bucuvalas*." *Id.* at 133.[6]

Critical for purposes of this case, and to the holding reached in *Kuc*, the defendant in *Kuc* did not challenge the subcategories of the warrant as being overbroad or unparticularized. *See id.* at 132, n.2 (noting that *Kuc* did not "argue on appeal that any of the twenty-three categories

---

[6] *See Andresen v. Maryland*, 427 U.S. 463 (1976) and *United States v. Bucuvalas*, 970 F.2d 937 (1ˢᵗ Cir.1992), *abrogated on other grounds by Cleveland v. United States*, 531 U.S. 12 (2000).

of items violated the particularity requirement," and the court thus deemed any such argument waived); *id*. at 133 ("The second clause, the particularity of which Kuc does not challenge on appeal, details the companies that Kuc was suspected of defrauding as well as the aliases, street addresses, and e-mail addresses he was believed to have used in his scheme").  As such, the First Circuit was free to rely upon the conceded particularity of the 23 sub-categories to rescue the otherwise unconstitutionally overbroad, general introductory language.[7]

Here, unlike *Kuc*, Mr. Merrill does indeed challenge the sub-categories as overbroad and unparticularized.  Unlike *Kuc*, the sub-categories at issue here do not request records for which probable cause had been established by the affidavit, and they are not constitutionally particularized.  For example:

Subcategory I (A): this subsection authorized the seizure of "[r]ecords and tangible objects pertaining to" Brazilian Help, Inc., Diskavontade, and Ympactus.  *See* Exhibit 1, Section I (A).  The affidavit did not establish probable cause to believe those companies engaged in criminal behavior.  As noted *supra*, Agent Soares does not recount any factual information in his affidavit regarding how these businesses engaged in criminal conduct, and he does not even offer conclusory assertions that Brazilian Help or other businesses were fraudulent pyramid schemes.  Moreover, there is no time limitation offered as to these records.  As such, law enforcement officers are facially authorized to seize records that date back indefinitely, despite the fact that there is no probable cause set forth in the affidavit of any arguable criminal conduct that pre-dates 2012.

Subcategory I (C): this subsection likewise authorized seizure of records

---

[7] The language of the search warrant at issue in *Kuc* can be found in the government's district court opposition pleading.  *See United States v. Kuc*, Case No. 11-cr-10014-DPW, Dkt. Entry 48, at pp. 4-7.

regarding Diskavontade, Brazilian Help, Inc., Ympactus, TelexFree LLC, and others—once again, there was no probable cause established to seize records from these companies.  Moreover, this subparagraph suffers from the same deficiency of the general, introductory paragraph—it authorizes seizure of records "without limitation."  Finally, there is no temporal limitation contained in this subparagraph.

Subcategory I (D): this paragraph suffers from the same deficiencies—it lists Diskavontade, Brazilian Help, TelexFree LLC, it contains language "including but not limited to," and it has no temporal limitation other than "the time of the respective companies' inception to the present," but there is no probable cause that these companies were engaged in criminal behavior from "their inception."

Subcategory I (H): Once again, this paragraph references Diskavontade, Brazilian Help, Inc., Ympactus and TelexFree LLC, and it does not contain any temporal limitations.

Several First Circuit decisions support suppression here.  In *United States v. Fuccillo*, 808 F.2d 173 (1987), the First Circuit upheld a district court's order suppressing all evidence seized pursuant to warrant because the single broad category in the warrants authorized the seizure of items for which there was probable cause and others for which there was no probable cause.  *Id.* at 175.  The affidavit in *Fuccillo* established probable cause to believe that the hundreds of thousands of dollars in stolen women's clothing was being stored by the defendant at three different locations connected to his clothing business.  *Id.*  The single category of items described in the affidavit, however, included all women's clothing, not just the stolen clothing. *Id.*  In reaching its decision, the court considered the extent to which "the warrant distinguished, or provides the executing agents with criteria for distinguishing, the contraband from the rest of

an individual's possessions. *Id.* at 177. The court noted that the affiant clearly could have obtained specific information to include in the warrant that would have enabled the searching agents to distinguish between contraband cartons of women's clothing from legitimate ones. *Id.* Accordingly, the court concluded "that the warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized." *Id.* Here, the affiant should have clearly distinguished between TelexFree records and the records of the other business entities, for which there was no probable cause of criminality established in the search warrant affidavit.

In *United States v. Diaz*, 841 F.2d 1 (1st Cir. 1988), the search warrant affidavit established probable cause to believe the defendant's produce wholesale business was engaged in an insurance fraud scheme involving cash bribes. *Id.* at 2. The warrant authorized the seizure of numerous categories of evidence constituting violations of "Title 18, U.S. Code, Sections 1343, 201 and/or 1341," but failed to limit the search to the specific timeframe of the fraudulent activity. *Id.* at 2-3. The First Circuit determined that all search categories were overbroad because they failed to properly limit the seizures to the duration of the fraudulent scheme, but limited suppression to a single category of evidence to which the *Leon* good faith exception did not apply. *Id.* at 6. The same deficiency exists here—Attachment B repeatedly fails to define or control the searching authority by proper temporal limits.

    C.  *All evidence derived from seized computers must be suppressed.*

Section II of the search warrant is even more overbroad and unparticularized. It facially authorized the seizure of "[a]ll computer hardware, computer software, computer-related documentation, and storage media ('computer equipment')." It does not even attempt to limit the seizure of computers by referencing the purportedly implicated statutory sections (18 U.S.C. §§

1343 and 1349).  *See Kow*, 58 F.3d 423 (9th Cir.1995) (all fourteen categories in warrant,

including "all computers" category, deemed overbroad where none of the categories were limited

by description of crimes for which evidence was sought).  Moreover, while the warrant purports

to limit the *searching* of the computers to items described in Section I of the warrant, it does not

limit, in any respect, the *seizure* of the computers.  As such, the warrant wholly failed to provide

discretion, control or guidance to the officers executing the warrant as to computers that should,

or should not, be seized.

      The dangers presented by the absence of any control or guidance manifested itself during

the search.  According to Agent Soares' Report of Investigation, Joseph Craft, a consultant hired

by TelexFree to assist with their bankruptcy (not an employee), entered the premises during the

search and "attempted to grab a laptop and a bag," informing one of the officers that he was a

consultant and the laptop and bag were personal items.  Exhibit 6 at p.3.  According to Agent

Soares, another officer informed Mr. Craft that the laptop and bag "would be subject to search."

*Id*.  Surely, Agent Soares' affidavit did not establish probable cause to seize the personal laptop

of a consultant hired by TelexFree to assist with its bankruptcy, yet the over breadth and lack of

particularity of the search warrant permitted the agents to seize Mr. Craft's laptop.

      Moreover, the affiant knew from Merrill's Securities Division testimony that customer

support staff worked in the Marlborough office, and that independent consultants had been hired

to assist TelexFree, *see*, *e.g*., Merrill MSD Transcript, p. 58-60, yet the affiant ignored the

probability that many of those individuals undoubtedly brought to work personal computing

devices.  While the affiant asserted that the company itself was engaged in a large-scale pyramid

scheme, the affiant did not submit any facts establishing that personal computing devices of

employees and independent consultants were being used in furtherance of the alleged scheme, or

that they even knew of any alleged scheme. Yet, the affiant made no effort to limit the scope of the search to TelexFree computers containing evidence of wire fraud, and thus exposed the personal computing devices of employees and consultants to unlawful seizure, including personal laptops, iPads, tablets, personal cell phones, and personal thumb drives. In doing so, the affiant recklessly concluded that a generic description of "all computers" would somehow guide agents in what computers were properly subject to seizure. *See, e.g., Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) ("the problem [posed by the general warrant] is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings . . . ); *Montilla Records of Puerto Rico, Inc. v. Morales*, 575 F.2d 324, 327 (1st Cir. 1978) ("In sum, were this seizure to be upheld, we would signal a rule allowing general warrants with only generic descriptions to issue solely on evidence that particular and easily differentiated contraband of that generic class was to be found on the premises to be searched. This would be an unnecessary and dangerous dilution of search warrant requirements."); *United States v. Klein*, 565 F.2d 183, 190 (1st Cir.1977) (Campbell, C.J., dissenting) ("[t]he trouble with a generic description is that it does not direct the officer which articles to select for seizure from the described, generally inoffensive class.").

   D.  *Leon does not apply to the warrant at issue.*

   The government has the burden to demonstrate the applicability of the good faith exception first articulated in *United States v. Leon*, 468 U.S. 897, 923 (1984), and unless it can meet that burden, the evidence must be suppressed. *See, e.g.*, *United States v. Diehl*, 276 F.3d 32, 42 (1st Cir. 2002). It will not be able to do so in this case. "Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996). The determination whether the *Leon* good faith exception should be

applied in a particular case requires an "inquir[y] into the 'objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization,'" *Diaz*, 841 F.2d at 5, *quoting Leon*, 468 U.S. at 922 n.23, and an officer "is required to have a 'reasonable knowledge of what the law prohibits.'" *Fuccillo*, 808 F. 2d at 177, *citing Leon*, 468 U.S. at. 920. N.20. In the context of an overbroad warrant, "a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923.

Applying the dictates of *Leon*, the First Circuit has repeatedly declined to apply the good faith exception in circumstances where an affiant recklessly fails to distinguish items properly subject to seizure from those for which probable cause has not been established. *See e.g. Fuccillo* 808 F.2d at 178 *(*declining to apply *Leon* where affiant failed to limit the search to stolen women's clothing for which probable cause existed and impermissibly broadened the scope of the warrant); *Roche,* 614 F.2d at 7-8 (*Leon* does not apply where the government simply could have limited the search to automobile insurance records for which probable cause existed but declined to do so and impermissibly broadened the scope of the search); *Lafayette Academy, Inc.*, 610 F.2d at 1 (no good faith where government sought warrant for broad class of documents that should have been limited to meet the particularity requirement); *cf, Diaz*, 841 F.2d 5-6 (good faith a "close call" where warrant permitted seizure of company's records dating to inception of company, but first instance of identified fraud occurred eight months after company's inception).

The affiant here prepared the "all records" and "all computers" sections of the warrant in the same manner as the warrants in the cases cited above, recklessly failing to limit the search category to items for which probable cause existed, or to limit the warrant temporally. To be

sure, any agent reading the warrant would have logically concluded that every record and every computing device found in TelexFree's offices was subject to seizure regardless of its connection to the alleged fraudulent scheme, and/or without regard for its date.  Any reasonably well-trained agent engaged in the execution of federal search warrants would understand that the law prohibits this sort of general rummaging through individuals' belongings and limits searches to those items for which probable cause exists.  Moreover, a well-trained agent would have recognized that a warrant permitting an unrestrained search for every computing device located within a work place exceeded the scope of items for which probable cause existed and was therefore illegal.

For the foregoing reasons, the *Leon* good faith exception does not apply here and all evidence derived from the seizure of computers at TelexFree's offices must be suppressed.

III. <u>*Conclusion*</u>.

For all of the reasons detailed herein, Mr. Merrill respectfully submits that all evidence seized pursuant to the warrant must be suppressed.

<div style="margin-left:40%">

Respectfully Submitted,
JAMES MERRILL,
By His Attorney,


**/s/ Robert M. Goldstein**
Robert M. Goldstein, Esq.
Mass. Bar No. 630584
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

</div>

Dated: May 20, 2016

## Certificate of Service

I, Robert M. Goldstein, hereby certify that on this date, May 20, 2016, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants, including Assistant U.S. Attorneys Andrew Lelling and Neil Gallagher.

**/s/ Robert M. Goldstein**
Robert M. Goldstein